2009 UT App 215

**Tracy STRAUSS, Petitioner and Appellee,**

v.

**David TUSCHMAN, Respondent and Appellant.**

No. 20080356–CA.

Court of Appeals of Utah.

Aug. 6, 2009.

Maria L. Booth, Park City, for Appellant.

Amy E. Hayes Kennedy, Salt Lake City, for Appellee.

Before Judges BENCH, ORME, and DAVIS.

OPINION

BENCH, Judge:

¶1 David Tuschman appeals the district court's determination that he lacks standing to petition for visitation with his former stepdaughter. We affirm.

BACKGROUND

¶2 David Tuschman (Stepfather) and Tracy Strauss (Mother) were married in 1996. Their marriage was punctuated by several separations. Although living apart and even at one time residing in different states, the parties maintained frequent contact. Throughout the marriage, even during times of separation, Stepfather developed a parental relationship with Mother's daughter (Child).[1]

¶3 The parties separated permanently in May 2004, and Mother petitioned for divorce in August of that same year. Mother initially permitted Stepfather visitation with Child. Beginning in early 2005, however, Stepfather encountered increasing difficulties visiting Child. In June 2005, the district court granted the parties a divorce and bifurcated for later resolution matters of property division, alimony, and visitation.

¶4 Prior to entry of the divorce, Stepfather had petitioned for parent-time with Child under Utah Code sections 30–3–5(1) and 30–3–5(5)(a). See Utah Code Ann. § 30–3–5(1), (5)(a) (Supp.2004). Previous versions of these statutes have been interpreted to grant stepparents standing to request visitation with their spouse's children. See Gribble v. Gribble, 583 P.2d 64 (Utah 1978). In July 2005, over Mother's objection, the district court granted Stepfather temporary visitation with Child, finding that Stepfather had provided support for Child, participated in her life by engaging in normal father-daughter activities, and formed a strong bond of love and affection with Child.

¶5 Although Stepfather attempted to enforce the district court's temporary visitation order and had sporadic court-ordered visitation with Child through the summer of 2005, he has not had regular visits with Child since March 2005 and ceased his visitation attempts after August 2005. A court-ordered reunification occurred in March 2007, which ended abruptly when Child refused to participate and left the session.

¶6 Prior to the bench trial to resolve the parties' issues of property division, alimony, and visitation, Mother submitted a motion in limine in which she asserted that Stepfather had no standing to petition the court for parent-time. Based on a recently decided

---

1. Child was born to Mother in 1994 from a previous relationship. Child had no relationship with her biological father, nor did her biological father have any knowledge of Child's existence until sometime in early 2005. Although Stepfather was Child's sole father-figure throughout the marriage, Child has since begun to establish a relationship with her biological father and apparently no longer desires a relationship with Stepfather.

case, *Jones v. Barlow*, 2007 UT 20, 154 P.3d 808, the district court concluded that Stepfather lacked standing to petition for visitation because, following the divorce, Mother terminated his in loco parentis relationship with Child. Stepfather appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Stepfather claims that he has standing pursuant to Utah Code section 30–3–5(5)(a) to petition for visitation because of his in loco parentis relationship with Child. Whether a party has "statutory standing" to bring an action presents a question "of statutory interpretation, which we review for correctness." *Washington County Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 7, 82 P.3d 1125.

## ANALYSIS

¶ 8 Stepfather asserts that he has standing to petition for visitation under Utah Code section 30–3–5(5)(a), as previously interpreted by *Gribble v. Gribble*, 583 P.2d 64 (Utah 1978), because he stood in loco parentis to Child. Section 30–3–5(5)(a) states, "In determining parent-time rights of parents and visitation rights of grandparents and other members of the immediate family, the court shall consider the best interest of the child." Utah Code Ann. § 30–3–5(5)(a) (Supp.2004). In *Gribble*, the Utah Supreme Court interpreted a prior version of this statute as granting stepparents standing to petition for visitation with their spouse's children. *See* 583 P.2d at 68. The supreme court reasoned that if a stepparent stands "in loco parentis, he [or she] should be considered a parent for purposes of [section] 30–3–5" because a stepparent who has "assumed the status of one in loco parentis to the child . . . [is] in a different position" than other persons unrelated to the child. *Id.* at 68, 66; *see generally id.* at 66 ("The term 'in loco parentis' means in the place of a parent, and a 'person in loco parentis' is one who has assumed the status and obligations of a parent. . . ."). In so reasoning, the supreme court also stated that only a stepparent or a child could terminate the in loco parentis relationship at will. *See id.* at 67 ("The common law concerning termination of the in loco parentis status is that

*only* the surrogate parent or the child is able to terminate the status at will, and the rights, duties, and obligations continue as long as they choose to continue the relationship." (emphasis added)).

¶ 9 Subsequent to *Gribble*, the Utah Supreme Court decided *In re J.W.F. (Schoolcraft)*, 799 P.2d 710 (Utah 1990), in which it again addressed the issue of a stepparent's rights with respect to his or her spouse's children. In *Schoolcraft*, the supreme court concluded that a stepfather had standing to petition for custody of a child not biologically his own but born to the mother during the mother and stepfather's marriage. *See id.* at 716. The *Schoolcraft* court contemplated several bases for standing but reasoned that standing should be determined in light of a "person's legal relationship to the child," such as being "married to the child's natural . . . parent." *Id.* at 715–16 (internal quotation marks omitted).

¶ 10 The Utah Supreme Court recently revisited the issue of whether a person legally unrelated to a child has standing to petition a court for visitation with that child. In *Jones v. Barlow*, 2007 UT 20, 154 P.3d 808, the supreme court held "that the doctrine of in loco parentis . . . does not independently grant standing to seek visitation after the in loco parentis relationship has ended." *Id.* ¶ 2. The supreme court distinguished *Jones* from *Gribble*, noting the stepparent's "standing in [*Gribble*] arose out of an interpretation of statutory law granting such rights, not from an independent common law source." *Id.* Nevertheless, the supreme court corrected a misstatement of law made in *Gribble* regarding the at-will termination of the in loco parentis relationship, stating, "[T]here is nothing in the authorities we cited in *Gribble* justifying the conclusion that the in loco parentis status may be terminated by *only* the surrogate parent or the child." *Id.* ¶ 19. The court then clarified that "a fit legal parent[ ] . . . . may freely terminate the in loco parentis status by removing her child from the relationship, thereby extinguishing all parent-like rights and responsibilities vested in the former surrogate parent." *Id.* ¶ 22.

¶ 11 Here, Stepfather clearly had an in loco parentis relationship with Child while he was married to Mother. However, his legal relationship with Child ended when the parties divorced, at which time Mother could terminate Stepfather's in loco parentis status at will. Because the legal relationship between the parties ended in divorce and Mother in fact terminated Stepfather's status, Stepfather lost the standing to petition for visitation with Child.[2]

¶ 12 Mother requests attorney fees on appeal. "A party seeking to recover attorney[ ] fees incurred on appeal shall state the request explicitly and set forth the legal basis for such an award." Utah R.App. P. 24(a)(9). We decline to grant Mother's request because she failed to set forth any legal basis for the award. *See Advanced Restoration, LLC v. Priskos*, 2005 UT App 505, ¶ 36, 126 P.3d 786 (declining to grant a party's request for attorney fees incurred on appeal because the party failed to cite either a rule of procedure or a specific statute as the legal basis for its request).

**2.** In 2008, in response to *Jones v. Barlow*, 2007 UT 20, 154 P.3d 808, the legislature enacted the Custody and Visitation for Persons Other Than Parents Act (the Act). *See* Utah Code Ann. §§ 30–5a–101 to –103 (Supp.2008) (effective May 5, 2008). Because the Act is not retroactive, it is inapplicable to this appeal. Accordingly, the clarification announced in this case is directly applicable only to cases arising after *Jones* but before the Act's effective date.

**3.** Having concluded that Stepfather lacks standing to petition for visitation with Child, we do not reach his other issues raised on appeal.

## CONCLUSION

¶ 13 We conclude that the district court correctly determined that Stepfather lacked standing to petition for visitation with Child. While Stepfather may have had statutory standing to petition for visitation with Child prior to the parties' divorce, that standing was lost when the marriage officially ended and Mother terminated the in loco parentis relationship between Stepfather and Child.[3]

¶ 14 We affirm, but we deny Mother's request for attorney fees on appeal.

¶ 15 WE CONCUR: GREGORY K. ORME and JAMES Z. DAVIS, Judges.